# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**DEREK N. JARVIS,**

    Plaintiff,

v.

**ANALYTICAL LABORATORY SERVICES, INC.,**

    Defendant.

Case No.: RWT 10cv1540

## MEMORANDUM OPINION

Plaintiff Derek Jarvis ("Jarvis") brings this employment discrimination action against Defendant Analytical Laboratory Services, Inc. ("ALS"). For the following reasons, the Court will deny Jarvis's Motion to Strike ALS's Opposition to Jarvis's Motion for Summary Judgment (ECF No. 39), grant ALS's Motion for Summary Judgment (ECF No. 22) and deny Jarvis's Cross-Motion for Summary Judgment (ECF No. 33).

## FACTS

On June 8, 2008, Jarvis, an African-American male, applied for a full-time driver position with ALS via e-mail. *See* Compl., ECF No. 1, at 2-4. Jarvis alleges that after he submitted his résumé via email, he spoke with Human Resources manager Beth A. Lovell ("Lovell") and Lovell told him he could begin work within two weeks after he completed the Equal Employment Opportunities Monitoring Form. *Id*. at 2. Jarvis alleges that after he completed the form, he received no further correspondence from ALS, from which he inferred that he was denied employment. *Id*.

In May of 2008, the Field Service Technician assigned to ALS's Columbia, Maryland route had resigned and ALS had subsequently advertised for the available position. *See* Def.'s Mot. for Summ. Judg. at 2, ECF No. 22. Lovell was in charge of collecting all of the résumés submitted by applicants for the open position and forwarding them to Scott Brunk ("Brunk"), ALS's Vice President of Corporate Operations. *See* Aff. of Beth A. Lovell at ¶ 3, Def.'s Mot. for Summ. Judg., Ex. 2, ECF No. 22. Brunk was responsible for hiring and supervising all ALS Field Service Technicians. *See* Aff. of Scott A. Brunk at ¶ 2, Def.'s Mot. for Summ. J. at Ex. 1, ECF No. 22. Brunk received nineteen résumés, including Jarvis's, from individuals interested in the advertised position, but did not conduct any interviews. Aff. of Scott A. Brunk at ¶ 4. Prior to reviewing the submitted résumés, he evaluated the need for a Field Service Technician based in Columbia, Maryland and decided to eliminate the position. *Id.* at ¶¶ 5, 6. Brunk did not know the race of any of the applicants for the position when he made the decision to eliminate the Columbia, Maryland route. *Id.* at ¶ 4.

Lovell was not involved in the hiring process, but did mail each applicant a form letter requesting that the applicant voluntarily complete the racial monitoring form. *See* Aff. of Beth A Lovell at ¶ 4, Def.'s Mot. for Summ. J. Ex. 2 at 2. Jarvis alleges, however, that Lovell spoke with him directly, promised him employment and informed him that the race monitoring form was mandatory. *See* Compl. at 2. Additionally, Jarvis alleges that Lovell told him that the prior driver for the Columbia route was black and that ALS had previously had problems with its black employees. *Id.* Lovell denies ever speaking with Jarvis, denies telling him that ALS had had problems with black employees in the past, and avers that if she ever had spoken with Jarvis, it would only have been to tell him that the open position was eliminated and that none of the applicants was hired. *See* Aff. of Beth A. Lovell at ¶ 8.

On June 20, 2008, Jarvis filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Compl. at 4, Ex. 2. On April 20, 2010, Jarvis received a "Right to Sue" letter which stated, in pertinent part, "Respondent [ALS] states no one has been hired for the Driver position for which you applied for in June 2008 and the previous Driver in that position was a black male."[1] Compl. at Ex. 3.

## PROCEDURAL HISTORY

On June 8, 2010, Jarvis filed a complaint in this Court alleging that ALS violated Title VII of the Civil Rights act of 1964, 42 U.S.C. 1981, and Md. Ann. Code 49B, §27 when it failed to hire him, allegedly on account of his race. Compl. at 1, ECF No. 1. Jarvis also alleged ALS was liable as a result of its negligent supervision and training of its employees. *See* Compl. at 6.

ALS answered the Complaint on August 1, 2010, and the Court issued a Scheduling Order requiring discovery to be completed by December 22, 2010. ECF Nos. 5, 6. The discovery process did not proceed smoothly.

On November 30, 2010, Jarvis filed a Motion to Compel ALS to produce documents pursuant to Rule 37(a) of the Federal Rules of Civil Procedure because ALS had not produced several documents he had requested. ECF No. 13. ALS opposed Jarvis's Motion to Compel. ECF No. 16.

On January 8, 2011, ALS filed a Motion for Sanctions, or in the Alternative, to Compel Plaintiff's Deposition. ECF No. 19. Jarvis opposed ALS's motion and filed a "Motion to Hold Defendants' [sic] in Contempt for Failure to Provide Initial Disclosures [pursuant to] Rule 26(a), or in the Alternative, Plaintiff's Motion to Compel Defendants' [sic] to Provide their Initial Disclosures." ECF No. 20. On January 24, 2011, ALS opposed Jarvis's Motion for Sanctions

---

[1] Though the EEOC letter states the previous driver was black, ALS's Response to Interrogatory No. 18 indicated that the previous driver was white. ECF No. 33, Ex. 3 at 11.

3

and filed a Motion for Summary Judgment. ECF Nos. 22, 23. On January 28, 2011, Jarvis filed a "Motion to Stay Defendants' Motion for Summary Judgment Motion, Pending Outcome on Plaintiff's Motion to Compel Regarding Discovery, or in the Alternative, Rule 56(f) Motion and Brief in Support." ECF No. 26.

On February 3, 2011, the Court denied without prejudice ALS's Motion for Sanctions, and denied without prejudice Jarvis's Motion to Compel and Cross-Motion for Sanctions because of the parties' failure to comply with the Local Rules. ECF Nos. 28-30. On February 4, 2011, the Court *sua sponte* extended the discovery deadline to March 4, 2011 and directed Jarvis to appear for a deposition by ALS within 15 days, or, in the alternative, on February 21, 2011. ECF No. 31. The Court also extended the deadline for Jarvis to respond to ALS's Motion for Summary Judgment and denied as moot Jarvis's Motion to Stay Proceedings. *Id*.

On February 8, 2011, Jarvis filed an opposition to ALS's Motion for Summary Judgment, a Cross-Motion for Summary Judgment and a Rule 56(f) Motion, averring that he needed additional discovery in order to properly oppose ALS's Motion for Summary Judgment. ECF No. 33. On February 8, 2011, Jarvis also filed a Motion to Vacate the Court's February 3rd Order and re-filed his Motion to Compel Production of Documents, along with a letter certifying his compliance with the Local Rules. ECF Nos. 32, 34. On February 15, 2011, the Court denied Jarvis' Motion to Vacate. ECF No. 36. On March 9, 2011, Jarvis filed a supplement to his Cross-Motion for Summary Judgment. ECF No. 37.

On March 30, 2011, ALS filed a Memorandum in Opposition to Jarvis's Cross-Motion for Summary Judgment and Supplemental Motion for Summary Judgment and a Reply in Support of its Motion for Summary Judgment. ECF No. 38. On April 4, 2011, Jarvis filed a Reply in support of his Cross-Motion for Summary Judgment and a Motion to Strike ALS's

opposition to his Cross-Motion for Summary Judgment. ECF No. 39. On April 14, 2011, ALS opposed Jarvis's Motion to Strike and moved, *nunc pro tunc*, for an extension of time in which to file its opposition pursuant to Rule 6(b) of the Federal Rules of Civil Procedure. ECF No. 40. Following a July 7, 2011, hearing on Jarvis' Motion to Compel (ECF No. 34), which resulted in ALS's production of additional documents, Jarvis filed a supplemental memorandum in opposition to ALS's Motion for Summary Judgment and in support of his Cross-Motion for Summary Judgment. ECF No. 49.

## ANALYSIS

### I. PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Jarvis argues that this Court must strike ALS's opposition to his Cross-Motion for Summary Judgment because ALS filed its opposition more than seventeen days after Jarvis filed his Cross-Motion for Summary Judgment. ECF No. 39 at 1. ALS admits that their response was untimely, but claims that Jarvis was not prejudiced by the delay, and ALS therefore moves for a *nun pro tunc* extension of time pursuant to Federal Rule of Civil Procedure 6(b)(1)(B).

Rule 6(b)(1)(b) of the Federal Rules of Civil Procedure provides that, when an act must be completed within a specific time period, "the court may, for good cause, extend the time . . . (b) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. Pro. 6(b)(1)(b). "'[E]xcusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993). "Rather, it may encompass delays caused by inadvertence, mistake, or carelessness, at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and

movant's excuse has some merit." *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d. Cir. 1995) (citing *Pioneer*, 507 U.S. at 388, 394-95) (internal quotation marks omitted).

ALS admits that it "calendared" the wrong date as the required response date to Jarvis' Cross-Motion for Summary Judgment. ALS explains that after the Court extended the discovery deadline to March 4, 2011, it assumed that Jarvis would not submit his cross-motion until March 18, 2011, 14 days after the March 4th extended deadline. Therefore, it scheduled its response for April 2, 2011. However, Jarvis filed his cross-motion on February 8, 2011, and ALS was therefore required to respond by February 25, 2011.

There is no evidence that ALS's late filing was done in bad faith, and its excuse for the late filing is reasonable under the circumstances. Additionally, ALS's response did not significantly delay the progress of this litigation. Because ALS appears to have acted in good faith, and because Jarvis was not prejudiced by the mistake, the Court will deny Plaintiff's Motion to Strike ALS's opposition.

## II. ALS'S MOTION FOR SUMMARY JUDGMENT & JARVIS'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant ALS is entitled to summary judgment on all of Plaintiff Jarvis's claims. First, Jarvis fails to put forth any evidence that could establish a prima facie case of discrimination in violation of Title VII or 42 U.S.C. § 1981. Even assuming Jarvis had sufficiently established a prima facie case of discrimination, ALS has proffered a legitimate, non-discriminatory explanation for its refusal to hire him, and Jarvis has not submitted any evidence to prove that ALS's proffered reason was pretextual. Jarvis also fails to present any evidence that could support a retaliation claim under Maryland's Fair Employment Practices Act ("FEPA"). Finally, Jarvis fails to show that ALS acted negligently in failing to hire him.

### A. Standard of Review

Summary judgment must be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrettet*, 477 U.S. 317, 322 (1986). The standard requires the court to ask "whether the evidence presents a sufficient disagreement to require submission to a [jury] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment may be granted where a claim rests on mere speculation and conjecture. *Deans v. CSX Trans Inc.*, 152 F.3d 326, 330 (4th Cir. 1998). "If the evidence is merely colorable, or is not significantly probative, summary judgment [is proper]." *Anderson*, 477 U.S. at 249-250 (citations omitted). When considering the evidence in the record, all reasonable inferences are to be drawn in favor of the non-moving party. *Id*. at 255.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion" or "grant summary judgment if the motion and supporting materials- including the facts considered undisputed- show that the movant is entitled to it." Fed. R. Civ. P. 56(e). In assessing whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**B. Title VII and 42 U.S.C. § 1981 Claims**

Jarvis claims that ALS's failure to hire him as a driver, as well as its failure to fill the open position after two years, shows that ALS discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Compl. at 2.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race . . . " 42 U.S.C. § 2000e-2(a)(1). "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2672 (2009). "Disparate-treatment . . . occur[s] [when] an employer has treated [a] particular person less favorably than others because of a protected trait." *Id.* (citing *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 985-986, (1988)) (internal quotation marks omitted). "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Id.* (citing *Watson*, 487 U.S. at 986) (internal quotation marks omitted). To prove a prima facie case of disparate treatment discrimination, the plaintiff must establish that (i) he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that the plaintiff was rejected under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Gbenoba v. Montgomery County Department of Health and Human Services*, 209 F. Supp. 2d 572, 575 (D. Md. 2002). The analytical framework applied to a Section 1981 claim is the same as that applied to a Title VII claim. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1509 (10th Cir. 1997).

Title VII and Section 1981 claims are properly analyzed under the *McDonnell Douglas* burden-shifting framework. *See Anderson v. Westinghouse Savannah River Company*, 406 F.3d 248, 268 (4th Cir. 2005); *Gbenoba v. Montgomery County Department of Health and Human Services*, 209 F.Supp.2d 572, 575 (Md. 2002) (citations omitted). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden "of proving by a preponderance of the evidence a prima facie case of discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981). "[T]he burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* at 253. "If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (citing *McDonnell*, 411 U.S. at 802) (internal quotation marks omitted). "Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

Jarvis has not established a prima facie case of discrimination under either Title VII or Section 1981. It is undisputed that Jarvis is a member of a protected class, that he applied for the available Field Service Technician position, and that he was rejected for that position. However, Jarvis produced no evidence that he was qualified for that position and was rejected under circumstances giving rise to an inference of unlawful discrimination.

In his opposition to ALS's Motion for Summary Judgment, Jarvis claims he was qualified for the position because he was a driver for another company for seven years and had at least fifteen years of driving experience for other employers. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. Judg., ECF No. 33 at 11. However, ALS has shown that Jarvis was terminated by a previous employer, undermining Jarvis's claim that he was qualified for the open position. *See*

Def.'s Mot. for Summ. Judg., ECF No. 22 at 6 n. 1 (citing Civil Case No. 07-cv-3385-DKC). Thus, to satisfy his burden of proof, Jarvis was required to have produced some other evidence to support his claim that he was qualified for the open position, which he has not done. As the Fourth Circuit has held, "[t]he fact that the claimant himself held and expressed the opinion that his performance [is] satisfactory notwithstanding the unrefuted indicia from business records that it was not . . . [has no] probative force . . . where [it] is not corroborated by [other objective evidence]." *Lovelace v. Sherwin-Williams Co*. 681 F.2d 230, 245 (4th Cir. 1982). This principle applies equally to Jarvis's blanket assertion that he was qualified for the position in spite of evidence that he has previously been terminated from similar positions. Jarvis's conclusory statements regarding his qualifications are insufficient to establish the second element of his prima facie case.

Yet, even assuming that Jarvis had sufficiently established the first three elements of his prima facie case, he has failed to offer evidence to establish the fourth element of a discrimination claim. Jarvis has failed to show that he was not hired under circumstances giving rise to an inference of discrimination.

Jarvis claims that he spoke with Lovell, who allegedly promised to hire him after he completed the race monitoring form. However, Jarvis has presented the Court with no evidence that such a conversation ever occurred, or that Lovell ever offered him a position. In fact, Lovell explicitly denies that she spoke with Jarvis, and both Lovell and Brunk, ALS's Vice President of Corporate Operations, swore that only Brunk had the authority to hire drivers. *See* Def.'s Mot. For Summ. Judg. Ex. 1 at ¶ 2, Ex. 2 at ¶ 8.

Jarvis also claims that Lovell informed him the race monitoring form was mandatory. *See* Compl. at 4. Again, the undisputed evidence shows that completion of the form was

voluntary and not used for hiring purposes. *See* Compl., Ex. 1, Def.'s Mot. Summ. Judg. Ex. 2 at 4.

Jarvis also submitted his EEOC "Right to Sue" letter as evidence that he was rejected under circumstances giving rise to an inference of discrimination. However, this letter merely stated that no one had been hired for the Field Service Technician position.[2] Jarvis has not shown that, after rejecting his application, ALS continued to seek other qualified applicants for the position. Rather, as ALS has demonstrated by unrefuted evidence, no one was hired for the position because the position was eliminated as a cost-saving measure. *See* Def.'s Mot. For Summ. Judg. Ex. 1, 2; *see also* Pl.'s Cross-Motion for Summ Judg., Ex. 5.

In his Supplemental Memorandum in opposition to ALS's Motion for Summary Judgment and in support of his cross-motion, Jarvis once again attempts to cast minor inconsistencies in ALS's documents and affidavits as evidence of discriminatory intent. ECF No. 49. In support of his Supplemental Memorandum, Jarvis submitted the affidavit of Karen L. Wilbert, ALS's Chief Financial Officer, and highlighted her statements (1) that "ALS is unaware of the race of the other individuals [who applied for the driver position] except for the race of Mr. Jarvis." and (2) that the previous driver was white as evidence of discriminatory intent. *See* ECF No. 49, Ex. A. Other documents produced during discovery show that ALS collected data on the number of minority applicants for the Driver position and also show that Lovell had previously told an EEOC mediation officer that the previous driver was African American. *See* ECF No. 49, Ex. B, C. From these two discrepancies, Jarvis draws the conclusion that ALS exercised discriminatory animus in failing to hire him.

---

[2] The relevant sentence of the "Right to Sue" letter reads: "Respondent states no one has been hired for the Driver position for which you applied for in June 2008 and the previous Driver in that position was a black male."

These minor discrepancies do not demonstrate that ALS or its employees discriminated against Jarvis in the hiring process. ALS is required by law to request that employment applicants fill out the EEOC's Race Monitoring Form. *See* Def.'s Mot. Summ. Judg., Ex. 2 at ¶ 4. However, applicants' racial information is not shared with hiring managers. *Id*. at ¶ 5. Thus, viewing Wilbert's statement in context, it is clear that her statement conveys that the race of other applicants for the driver position was never matched up with the names of those applicants, nor was it ever shared with Brunk, the hiring manager. Jarvis has not produced any evidence that shows that Brunk, the individual in charge of the hiring decision, had access to this information or made any decision based on Jarvis's race. Further, the mere fact that one of two ALS employees misstated the race of the previous driver will not alone give rise to an inference of discriminatory intent. There is simply no evidence that ALS failed to hire Jarvis on account of his race.

Even assuming, *arguendo*, that Jarvis had established his *prima facie* case, under the *McDonnell Douglas* framework, the burden would then shift to ALS to provide a legitimate, non-discriminatory reason for its failure to hire Jarvis. "This burden is one of production, not of persuasion . . ." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). At this stage of the *McDonnell Douglas* test, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 255. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254.

"[T]he employer has discretion [in its decision to reject an employment applicant], provided the decision is not based upon unlawful criteria." *Burdine*, 450 US at 259. ALS has

presented this Court with evidence that the Field Service Technician position was eliminated because it was blended with an existing route as a cost-saving measure. *See* Aff. of Scott A. Brunk, Def.'s Mot for Summ. Judg., Ex. 1 at ¶ 5. Such business decisions are valid, non-discriminatory bases for declining to hire an applicant for employment. None of the original nineteen applicants for the position was interviewed or hired. *See id*. at ¶ 4-5. ALS has shown that it did not interview or seek additional candidates for the Columbia, Maryland driver position. *See Id*. Ex. I, at 2-3. Furthermore, Brunk, ALS's Vice President of Corporate Operations, averred that he did not know of Jarvis's race at the time he made his decision to blend the existing routes, thereby eliminating the open position. *See Id*. at ¶ 7. ALS has clearly satisfied its burden of showing that its reason for not hiring Jarvis was legitimate and non-discriminatory.

"If the defendant satisfies [its] burden, the presumption of discrimination raised by the *prima facie* case 'drops out of the picture,' and the plaintiff is left with the ultimate burden of proving that the defendant's explanation is a mere pretext for discrimination." *Gbenoba*, 209 F.Supp.2d at 576 (citing *Reeves,* 530 U.S. at 143). To prove pretext, an employment applicant may "offer evidence that the facts supporting the defendant's articulated reasons are untrue," or that the "defendant's proffered reason, although factually supported, was not the actual reason for its decision . . . " *Gbenoba v. Montgomery Cnty. Dep't. of Health and Human Servs.*, 209 F. Supp. 2d 572, 577 (D. Md. 2002) (citations omitted). Though a Title VII plaintiff may present direct or indirect evidence to support his claim of discrimination, "[u]nsubstantiated allegations and bald assertions . . . fail to disprove [the employer's] explanation or show discrimination." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (citations omitted).

Jarvis has not produced any evidence showing that ALS's proffered explanation for not hiring him is pretext. Jarvis claims that ALS's rationalization for not hiring him is false as demonstrated by its inconsistent, post hoc rationalization for failing to hire him. *See Dennis v. Columbia Colleton Medical Center Inc.*, 290 F.3d 639, 647 (4th Cir. 2002) ("The fact that an employer has offered inconsistent, post-hoc explanations for its employment decisions is probative of pretext."). However, ALS has not shifted its rationalization for failing to hire him— it has always claimed that two driving routes were blended as a cost-saving measure which is why no one was hired for the driver position.

Jarvis claims that one sentence in the EEOC's "Right to Sue" letter proves that ALS gave the EEOC a different explanation regarding why it did not hire him than their current explanation. Jarvis claims ALS initially told the EEOC he was not hired because no one was hired for the position, but now claims the position was eliminated. The EEOC letter stated, "Respondent states no one has been hired for the Driver position for which you applied for in June 2008 and the previous Driver in that position was a black male." Compl. at Ex. 3. According to Jarvis, ALS "changed its story" once they learned of this lawsuit and fabricated their present justification to cover up their discriminatory practices. However, the two "different" rationalizations are not different at all. The EEOC letter merely states that the Field Service Technician position had not been filled, and ALS has now elaborated that it was not filled *because* it was blended with an existing route. The EEOC letter is not evidence that ALS has shifted its rationalization for not hiring Jarvis.

Jarvis's own opinions and conclusory allegations that ALS's reason for not hiring him is pretextual are insufficient to create a genuine issue of material fact. *See Goldberg v. B. Green and Co., Inc.,* 836 F. 2d 845, 848 (4th Cir. 1988). Jarvis has presented no evidence that ALS's

failure to hire him was discriminatory. Accordingly, ALS is entitled to summary judgment on Jarvis's Title VII and Section 1981 claims.

### C. Retaliation Claim Under Maryland's Fair Employment Practices Act

Jarvis alleges he was subject to retaliatory treatment in violation of Maryland's Fair Employment Practices Act ("FEPA"). *See* Compl. at 4. Jarvis cites Md. Ann. Code 49B, § 27; however, the Court assumes that Jarvis intends to assert a claim under FEPA's current anti-retaliation provision, Md. Code, State Government, § 20-606.[3] *See* Compl. at 4. The FEPA tracks Title VII's anti-retaliation provision and pursues the same objectives. *See Chappell v. Southern Maryland Hosp., Inc.*, 578 A.2d 766, 772 (Md. 1990). Section 20-606 states, in relevant part, "an employer may not discriminate or retaliate against any of its employees or applicants for employment . . . because the individual has (1) opposed any practice prohibited by this subtitle; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subtitle." Md. Code Ann., State Gov't § 20-606.

"To prevail in a claim for retaliation, [an] employee must show that [he] was subjected to retaliatory treatment for engaging in protected conduct." *Giant of Maryland, LLC v. Taylor*, 981 A.2d 1, 38-39 (Md. App. 2009).[4] "[F]or a [plaintiff] to prove a causal connection between an adverse employment action and protected conduct, [he] must show that the relevant actors involved in the adverse employment action had knowledge that [he] had engaged in the protected

---

[3] Md. Ann. Code 49B, § 27 was repealed by Acts 2009, c. 120, § 1, eff. Oct. 1, 2009. Md. Ann. Code art. 49B, § 18.

[4] While state statutes may be construed differently than analogous federal statutes, *see Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.10 (Md. 2007), the Maryland Supreme Court has used the federal standard to interpret Md. Ann. Code 49B. *See Chappell*, 578 A.2d at 773.

conduct." *Id*. at 39-40. "[T]he employee must allege that the retaliation produced an injury or harm." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66 (2006).

Jarvis has not presented any evidence that any action taken by ALS was in retaliation for his protected conduct. Retaliatory treatment "encompasses any action by the employer that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citing *Burlington*, 548 U.S. at 68) (internal quotations omitted). The only "harm" Jarvis claims he incurred was ALS's failure to hire him, and he does not allege that ALS failed to hire him because he engaged in protected conduct.[5] Accordingly, Jarvis's FEPA retaliation claim fails as a matter of law.

### D. Negligence

Jarvis's complaint alleges ALS is liable for "negligen[t] training & supervision" that caused him "extreme and irreparable harm . . . warranting the imposition of punitive damages." Compl. at 6. A prima facie case of negligence has the following elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached the duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Shields v. Wagman*, 714 A.2d 881, 884 (Md. 1998) (internal quotations marks and citations omitted). Jarvis alleges that ALS has a common law obligation to exercise care when training and supervising its employees. *See Compl.* at 6. However, Jarvis has presented the Court with no authority for the proposition (1) that such a common law duty exists, or (2) that ALS breached this "duty." Jarvis fails to identify any facts or legal authority that could support a negligence claim under these facts. ALS is entitled to summary judgment on Jarvis's negligence claim.

---

[5] A retaliation claim requires the adverse employment action to occur *after* an employee engaged in "protected conduct." The timing of the actions in this case makes a retaliation claim impossible.

### III. PLAINTIFF'S RULE 56(d) MOTION

In addition to his Cross-Motion for Summary Judgment, Jarvis filed a Motion for Additional Discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. ECF No. 33. The Court presumes that Jarvis intended to cite F. R. Civ. P. 56(d).[6]

Rule 56(d) provides that "if a nonmovant shows by affidavit . . . that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; [or] (2) allow time to obtain affidavits or declarations or to take discovery . . . " Fed. R. Civ. P. 56 (d) (2010). "Rule 56[d] . . . allows a party to seek additional time to obtain evidence as long as he can present an affidavit putting forth the reasons why he is unable to present the necessary opposing material." *Pine Ridge Coal v. Local 8377*, 187 F.3d 415, 421 (4th Cir. 1999). An affidavit "that conclusorily states that discovery is required is insufficient; the affidavit must specify the reasons the party is unable to present the necessary facts and describe with particularity the evidence the party seeks to obtain." *Radi v. Sebelius*, 10-1911, 2011 WL 2173756 at *1 (4th Cir. June 3, 2011) (citations omitted).

Jarvis's Rule 56(d) motion does not specify what information he believes additional discovery will uncover. The district court may deny a Rule 56(d) request if the plaintiff "makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth

---

[6] "Rule 56 was amended effective December 1, 2010; the amendments moved (without making material change) the substance of subsection (f) to subsection (d)." *Radi v. Sebelius*, No. 10-1911, 2011 WL 2173756 at *2 n. 1 (4th Cir. June 3, 2011).

17

or falsity of [a document] to be discovered." *Short v. Oaks Correctional Facility*, 129 Fed.Appx. 278, 281 (6th Cir. 2005) (citing *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir.1999) (internal quotation marks omitted). Jarvis has not articulated what information he hopes to uncover as a result of additional discovery, where such information may be located, or how it will support his case. Accordingly, the Court will deny Jarvis's Rule 56(d) Motion.

## CONCLUSION

ALS is entitled to summary judgment on all of Jarvis's claims. Accordingly, by separate order Jarvis's Motion to Strike will be denied, ALS's Motion for Summary Judgment will be granted, and Jarvis's Cross-Motion for Summary Judgment and Rule 56(d) Motion will be denied.

8-19-11
Date

By Alejandro Williams Jr. for RWT
Roger W. Titus
United States District Judge